# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CR-17-17-RAW |
| | ) |
| GLENN RANDALL FERGUSON, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION FOR SENTENCING VARIANCES

The Defendant, Glenn Randall Ferguson, respectfully moves this Court for downward sentencing variances. Mr. Ferguson stands convicted of one count of possession of certain materials involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). The June 1, 2020 Pre-Sentence Investigation Report ("PSR") indicates that Mr. Ferguson is in criminal history category I and calculates a total offense level of 36. PSR ¶¶ 35, 39. If not for the statutory maximum penalty of 10 years, the guidelines sentencing range would be 188 to 235 months. PSR ¶¶ 56-57. Because the statutory maximum is 10 years, the PSR reflects that the guidelines range is 120 months. *Id.*

Mr. Ferguson requests the Court grant departures and/or variances, and enter a sentence of 24 months and a five-year term of supervised release.

Mr. Ferguson seeks variances for the following reasons:

1. Mr. Ferguson's was on pretrial release for almost three years from 2017 to his conviction in January 2020 with no allegations of disciplinary issues or violations of the terms and conditions of release;

2. Mr. Ferguson suffers from depression, memory deficits, and mental health issues secondary to traumatic brain injuries;

1

6:17-cr-00017-RAW   Document 157   Filed in ED/OK on 06/02/20   Page 2 of 14

3. the nature of Mr. Ferguson's conviction will make him susceptible to abuse in the penitentiary;

4. given Mr. Ferguson's age and lack of criminal history, he poses a minimal risk of recidivism;

5. the numerous sentencing enhancements provide a guidelines sentence over the statutory maximum and are contrary to the intent of Congress; and

6. the requested sentence, including its collateral consequences, is sufficient to satisfy the sentencing goals of Section 3553(a).

## **OBJECTIONS**

Mr. Ferguson objected to the Draft PSR by letters to the U.S. Probation Office dated April 2, 2020 and April 3, 2020, and provided supplemental case law in a letter dated April 20, 2020. This filing incorporates by reference those letters and all other letters regarding the Draft PSR.

## **ARGUMENT AND AUTHORITY**

**A.     This Court's Sentencing Discretion and Requirements**

A district court is required by statute, 18 U.S.C. § 3553(a), to consider seven factors in sentencing. *United States v. Cookson*, 922 F.3d 1079, 1092 (10th Cir. 2019). A district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007), *citing Rita v. United States*, 551 U.S. 338, 347-48 (2007). It is error for a district court to presume that the guidelines range is reasonable. *Gall*, 552 U.S. at 50. A district court must consider all of the factors of Section 3553(a) in determining a sentencing after making "an individualized assessment based on the facts presented." *Id.* The guidelines "are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment." *Id.* at 59. *See also United States*

*v. Wiseman*, 749 F.3d 1191, 1195-96 (10th Cir. 2014) (same).  The "overarching instruction" of Section 3553 is for the sentencing court to "impose a sentence sufficient, but not greater than necessary," to accomplish the sentencing goals set forth in Section 3553(a)(2).  *Kimbrough v. United States*, 552 U.S. 85, 89 (2007).

The requested sentence of 24 months' imprisonment and five years' supervised release would fulfill the overriding goal of imposing a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a)(2).  The requested sentence would reflect the seriousness of his conviction of possession of child pornography, and it would provide a just punishment.  It would promote respect for the law and have a deterrent effect.  The requested sentence would protect the public from the possibility of recidivism by Mr. Ferguson.

Two recent Tenth Circuit cases give guidance on sentencing that is applicable to Mr. Ferguson's circumstances and the requested sentence.  *Cookson*, 922 F.3d at 1092-96 (discussing district court's sentence of 5 years' probation in child pornography case); *United States v. DeRusse*, 859 F.3d 1232, 1236-41 (10th Cir. 2017) (affirming district court's imposition of sentence of time served plus five years of supervised release on defendant's guilty plea to one count of kidnapping).

In *Cookson*, the defendant was arrested after law enforcement linked him to an account on a child pornography Internet site.  *Cookson*, 922 F.3d at 1083.  The defendant was charged with two counts of possessing child pornography after images were found "on various devices."  *Id.* at 1083-84.  He pleaded guilty, and his maximum statutory sentence was twenty years' imprisonment with a minimum of five years' supervised release.  *Id.* at 1084.  The PSR increased Mr. Cookson's base offense level of 18 to 28 "due to a number of adjustments pursuant to U.S.S.G. § 2G2.2, including[:]"

3

> a two-level increase under U.S.S.G. § 2G2.2(b)(2) because the material involved a prepubescent minor;
>
> a four-level increase under U.S.S.G. § 2G2.2(b)(4) because the material involved sadistic or masochistic conduct or other depictions of violence;
>
> a two-level increase under U.S.S.G. § 2G2.2(b)(6) because the offense involved the use of a computer[;] and
>
> a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) because Mr. Cookson possessed more than 600 images of child pornography.

*Id.* at 1084-85 (reformatted from original for clarity). The quoted enhancements will be referred to herein as the "Four 2G2.2 Enhancements." The defendant in *Cookson* had a criminal history category of III, and therefore the PSR calculated his guidelines range as 97-121 months' imprisonment.[1] *Id.* After hearing from the parties and from the defendant, the district court sentenced the defendant to five years' probation. *Id.* at 1087. The district court cited many reasons including the defendant's mental health issues and his conduct while on pretrial release. *Id.* at 1086-87.

The government in *Cookson* appealed the five-year probationary sentence as substantively unreasonable. *Id.* at 1090. The Tenth Circuit reviewed the district court's reasons, noting that the court's explanation had primarily focused on the nature and circumstances of the offense and the history and characteristics of the defendant, citing Section 3553(a)(1). *Id.* at 1092. The Tenth Circuit agreed that the "combination of [the defendant's] circumstances could reasonably support a downward variance, even a large one," citing Section 3553(a)(1). *Id.* at 1093.

The Tenth Circuit also wrote approvingly of the district court's policy disagreement with the Four 2G2.2 Enhancements. *Id.* The *Cookson* court, citing and quoting previous Tenth Circuit

---

[1]  The Four 2G2.2 Enhancements were applied in an identical fashion in Mr. Ferguson's case. Draft PSR ¶¶ 23-24, 26-28.

4

cases, noted that district courts had been specifically cautioned to carefully apply the guidelines regarding child pornography and to "remain mindful that they possess broad discretion in fashioning sentences under § 2G2.2." *Cookson*, 922 F.3d at 1093 (further quotations and citations omitted). The *Cookson* court noted with apparent approval cases that rejected the Four 2G2.2 Enhancements "for want of an empirical basis." *Id.* The court also noted that "ubiquitous application of the [Four 2G2.2 Enhancements] resulted in virtually no distinction between sentences" for mere possession when compared to "the most dangerous offenders." *Id.* (further quotations and citations omitted). The Tenth Circuit agreed that the district court had not abused its discretion in determining that these policy disagreements "could support the imposition of a more lenient sentence." *Id.*[2] *See also DeRusse*, 859 F.3d 1232.[3]

Thus, this Court has substantial discretion in sentencing Mr. Ferguson. The advisory guidelines range is only one factor to be considered, and this Court should consider all of the

---

[2] After stating its support for the reasons given by the district court, the Tenth Circuit then discussed at length the failure of the district court to explain how it weighed those reasons, as well as its failure to discuss other Section 3553(a) factors. *Cookson*, 922 F.3d at 1093-95. The *Cookson* court found the sentence "substantively unreasonable" in large part "based on the significant variance in Mr. Cookson's sentence and the district court's limited and inconsistent explanation for that variance." *Cookson*, 922 F.3d at 1095. The Tenth Circuit vacated the sentence and remanded for resentencing while not foreclosing "the possibility that a more detailed explanation from the district court of the weight it afforded § 3553(a) factors other than § 3553(a)(1) could yield a similar, but substantively reasonable, sentence on remand." *Id.* at 1096. On remand, the district court resentenced Mr. Cookson to the same sentence of 5 years' probation. See the Amended Judgment (Docket 86) and Amended Statement of Reasons (Docket 87) United States v. Cookson, 17-CR-10087-JWB (D. Kan July 1, 2019). The government did not appeal the result of the resentencing.

[3] The *Cookson* court cited *DeRusse* with approval and used it as an example of affirming a district court that had adequately explained its reasons for departures and variances. *Cookson*, 922 F.3d at 1093-95. The Tenth Circuit in *DeRusse* affirmed a 70-day time-served sentence followed by 5 years' supervised release when the PSR for the defendant's kidnapping offense gave an advisory guidelines range of 108-135 months. *DeRusse*, 859 F.3d 1232.

Section 3553(a) factors in reaching the decision that the requested sentence is sufficient, but not greater than necessary, to comply with all of the purposes of sentencing.

**B.      This Court Should Depart and Vary from the Four 2G2.2 Enhancements.**

As discussed above, the Tenth Circuit in the *Cookson* case instructed district courts to carefully apply Section 2G2.2 and discussed the widespread recognition by federal courts of serious flaws in the Four 2G2.2 Enhancements. *Cookson*, 922 F.3d at 1093. Mr. Ferguson requests that this Court adopt the reasoning approved of in *Cookson* and reject the Four 2G2.2 Enhancements, and find that Mr. Ferguson's correct total offense level, before any variances are applied for other Section 3553(a) factors, should be 15.

1.      Lack of Empirical Basis

The first argument that the *Cookson* court noted with approval is the line of cases that rejected the Fourth 2G2.2 Enhancements "for want of an empirical basis." *Cookson*, 922 F.3d at 1093. The *Cookson* court said that the Tenth Circuit had previously referenced a "number of reported cases where district courts have rejected application of § 2G2.2 for want of an empirical basis. *Id.*, *quoting United States v. Grigsby*, 749 F.3d 908, 911 (10th Cir. 2014). It would not be helpful to repeat the lengthy and thorough discussions, together with citations to numerous reported opinions, of the flaws of Section 2G2.2 in the authorities cited by the Tenth Circuit in *Cookson* and *Grigsby*. Instead, Mr. Ferguson urges the Court, if it needs authorities beyond *Cookson* and *Grigsby*, to look at those authorities cited with approval by the Tenth Circuit, especially the Second Circuit's much-cited decision in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) and a 2012 report by the Sentencing Commission.[4]

---

[4]      United States Sentencing Commission, Report to Congress; Federal Child Pornography Offenses at 331 (Dec. 2012) (the "2012 Commission Report") available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-

2.   Automatic Application of the Four 2G2.2 Enhancements is Inconsistent with Congressional Intent and the Goals of Sentencing

The second policy disagreement with the Four 2G2.2 Enhancements noted by the *Cookson* court was that "ubiquitous application" of the enhancements resulted in no distinction between the sentences of defendants guilty of possession and those of "the most dangerous offenders who, for example, distribute child pornography for pecuniary gain." *Cookson*, 922 F.3d at 1093, *quoting Dorvee*, 616 F.3d at 186-87. Part of the "ubiquitous" application noted by the *Cookson* court has been caused by technology changes. The internet and digital media have drastically increased the accessibility and volume of child pornography for online consumption. 2012 Commission Report at 18.

In this case, the statutory penalty ranges from zero to ten years in prison. Because Mr. Ferguson has zero criminal history points, and the facts of his child pornography possession are typical for a first offender, it might be expected that his sentence would be toward the low end of the possible statutory penalty of 0-10 years. Instead, the advisory guidelines apply multiple enhancements that give even a first-time offender a sentence that is contrary to Congressional intent as reflected in the statutory penalty. The 2012 Commission Report concluded that the sentencing scheme for child pornography should be updated "to better reflect the technological changes." 2012 Commission Report at 3. The Internet allows for the easy downloading of enormous quantities of child pornography. *See, e.g., United States v. Burgess*, 576 F.3d 1078, 1084 (10th Cir. 2009) (conservative estimate of 70,000 images found). Because of these technological changes, the Four 2G2.2 Enhancements apply in almost all possession cases. 2012 Commission Report at iii. *See also United States v. Kelly*, 868 F. Supp. 2d 1202, at 1204-05 (D.N.M. 2012)

---

offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (last visited April 10, 2020).

("as widespread as computer use is now, enhancing for the use of a computer is a little like penalizing speeding, but then adding an extra penalty if a car is involved").[5]

Ultimately, the Four 2G2.2 Enhancements describe conduct that is "essentially inherent to the crime itself," not aggravating factors describing a more serious offense or higher risk of harm. *Kelly*, 868 F. Supp. 2d at 1208. Applying enhancements in almost every case is contrary to the purpose of enhancements, which are meant to increase a sentence for conduct more aggravated than the typical type of offense. *See United States v. Bridges*, 50 F.3d 789, 791-92 (10th Cir. 1994) (incorporating 2-point enhancement into every case involving theft "would inevitably render the very concept of 'enhancement' meaningless"); *United States v. Landmesser*, 378 F.3d 308, 313 (3d Cir. 2004) (vacating sentence when district court's application of enhancement in case involving release of anhydrous ammonia during a theft would apply to "every instance" of such a release thus rendering the language of the enhancement "meaningless"). *See also Benoit*, 605 Fed. Appx. at 704, 707 (quoting Judge Payne's decision to grant a downward variance because the two level enhancement for using a computer to receive pornographic images "applies in virtually every case and, thus, fails to differentiate among offenders with respect to their involvement in child pornography communities").

3. Automatic Application of the Four 2G2.2 Enhancements Leads to Sentencing Disparities

In addition to the Tenth Circuit examples discussed above, statistics also make clear that sentencing courts do not follow the guidelines most of the time. In the 2012 Commission Report's

---

[5] The enhancement in Section 2G2.2(b)(7) based on number of images applies in nearly every case, 96.9% of 2010 non-production cases. 2012 Commission Report at 209, Table 8-1. The enhancement of Section 2G2.2(b)(2), "the materials involved a prepubescent minor or a minor who had not attained the age of 12 years," was applied in 96.3% of non-production cases in 2010. 2012 Commission Report at 105, 209, Table 8-1.

executive summary, the Commission noted the "steadily decreasing rate of sentences imposed within the applicable guidelines ranges in non-production cases." 2012 Commission Report at ii. The Commission noted that the "rate [of within-guidelines sentences] decreased from 83.2 percent in fiscal year 2004 . . . to 32.7 percent in fiscal year 2011." *Id.* Stated more succinctly: two out of three sentences imposed for possession of child pornography were below the guidelines in statistics that are almost 10 years old now. Mr. Ferguson respectfully requests that this Court use its discretion in this case to vary from the guidelines, especially given these statistics. See also 18 U.S.C. § 3553(a)(6) (identifying "the need to avoid unwarranted sentence disparities" as a sentencing purpose); 28 U.S.C. § 991(b) (identifying "avoiding unwarranted sentencing disparities" as a statutory purpose for creating Sentencing Commission); *Kimbrough*, 552 U.S. at 108 (district judges required to "take account of sentencing practices in other courts").[6]

**C.    The Court Should Consider Mr. Ferguson's Personal Characteristics That Support Downward Departures or Variances.**

Sentencing courts are obligated to look beyond the crime and tailor a sentence that is appropriate for the particular defendant.

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

---

[6]    Mr. Ferguson is aware of this Court's sentencing decision in United States v. Mandrell, Case No. CR-17-23-RAW Doc. 47 (E.D. Okla. November 3, 2017), aff'd 741 F. App'x 554 (10th Cir. 2018) (unpublished) in which arguments similar to those made by Mr. Ferguson were rejected. Mr. Ferguson asks this Court to consider the important differences in facts between those in Mandrell and those of Mr. Ferguson's circumstances and to come to a different sentencing decision. The number of images in Mandrell, the defendant's continuing to download child pornography after the FBI's first search warrant, and the defendant's significant history of violence are all facts not present in Mr. Ferguson's case. Mr. Ferguson respectfully requests that this Court sentence him as an individual rather than apply the Court's decision in Mandrell.

*Pepper v. United States*, 562 U.S. 476, 487 (2011), *quoting Koon v. United States*, 518 U.S. 81, 113 (1996).

### 1.   Mr. Ferguson had no allegations of violations of conditions of release from 2014 to 2020.

This Court has the best evidence possible to show that a long prison sentence is not necessary in Mr. Ferguson's case:  Mr. Ferguson's conduct from the time that the search warrant was served in April 2014 to when he was taken into custody after his jury trial in January 2020.  The fact that Mr. Ferguson could go for over five years, most of which under pretrial supervision, without any allegations of wrongdoing is an important one that this Court should consider in granting a significant downward variance.

The defendant in the *Cookson* child pornography case had a criminal history category of III, but he had apparently gone 21 months in pretrial release with good behavior, including rehabilitation from drugs.  *Cookson*, 922 F.3d at 1085.  Partly based on Mr. Cookson's positive steps taken during pretrial release, the district court sentenced Mr. Cookson to five years' probation.  *Id.* at 1086-87.[7]  See also *United States v. Martin*, 2012 WL 843629 *7 (D.N.M. February 22, 2012) (citing the defendant's "post-offense rehabilitation" as one reason for granting the variance in an involuntary manslaughter case); *United States v. Williams*, 2018 WL 1014141 *3 (D. Colo. February 22, 2018) (finding probation appropriate in false statement case in part based on the defendant's compliance "with the conditions of his bond and terms of his pretrial and post-conviction release").

This Court should follow the examples of the sentencing courts in *Cookson*, *Martin*, and *Williams* given the history of Mr. Ferguson's case.  From the time of the FBI's search in April

---

[7]   See Footnote 3, *infra*, for the ultimate disposition by the Tenth Circuit in *Cookson* as well as the district court's resentencing.

2014, to the time of the indictment in March 2017, there were no allegations that Mr. Ferguson viewed child pornography or violated any laws. At the arraignment, this Court released Mr. Ferguson on terms and conditions of pre-trial release. From March 2017 to his trial, Mr. Ferguson was under the supervision of the United States Probation Office, with no reports of discipline issues or violations of pre-trial release.[8] Based on Mr. Ferguson's behavior since 2014, it is clear from the evidence that he reformed his criminal conduct, he poses no danger to society, he is not a flight risk, and he can easily be supervised by the United States Probation Office. This Court should consider these factors when fashioning a sentence.

### 2. This Court should consider Mr. Ferguson's two traumatic brain injuries and the resulting mental and psychiatric deficits when fashioning a sentence.

The evidence is clear Mr. Ferguson suffered two traumatic brain injuries that arguably affected his mental cognitive abilities. The objective testing proves Mr. Ferguson suffers from, and been treated for, depression, memory deficits, and anti-social personality issues. The district court in *Cookson* considered the defendant's drug addiction and depression at the time of his offense conduct of possession of child pornography. *Cookson*, 922 F.3d at 1092. *See also United States v. Huckins*, 529 F.3d 1312, 1314-18 (10th Cir. 2008) (affirming sentence of first-time offender in child pornography case to 18 months' imprisonment with 3 years' supervised release in part due to the defendant's depression at the time he committed the offense).

In *DeRusse*, the defendant had kidnapped his ex-girlfriend "while suffering from then-undiagnosed mental health issues." *DeRusse*, 859 F.3d at 1234. A forensic psychologist evaluated the *DeRusse* defendant and diagnosed him with major depressive disorder and obsessive-

---

[8] Additionally, this Court ordered Mr. Ferguson to undergo two separate psychiatric evaluations. Mr. Ferguson successfully self-reported to the BOP Medical Facility in Ft. Worth, Texas, and the BOP Medical Facility in Butner, North Carolina. After lengthy evaluation periods, Mr. Ferguson returned to Muskogee without incident.

11

compulsive disorder. *Id.* The district court said that while the mental illness did not justify the kidnapping, it was a legitimate factor to be taken into account, and the court noted that "there have been absolutely no issues" regarding the defendant's pre-sentencing conduct. *Id.* at 1235. The *DeRusse* district court sentenced him to time served followed by five years of supervised release. *Id.* The Tenth Circuit affirmed. *Id.* at 1240-41. This Court should follow the examples of *Cookson*, *DeRusse*, and *Huckins* and should impose the requested sentence in part due to Mr. Ferguson's traumatic brain injuries and mental health issues.

Furthermore, this Court should take into account that Mr. Ferguson was unable to qualify for the downward adjustment for acceptance of responsibility pursuant to USSG § 3E11. Mr. Ferguson's memory issues made it impossible for him to plead guilty to something that he did not remember. This Court should keep in mind this additional effect of Mr. Ferguson's history of traumatic brain injuries.

### 3. This Court should consider Mr. Ferguson's vulnerability to abuse in the penitentiary.

This Court should consider Mr. Ferguson's vulnerability if he were to be imprisoned for a significant time. *Koon v. U.S.*, 518 U.S. 81, 106-07 (1996) (sentencing courts have discretion to consider collateral consequences); *United States v. LaVallee*, 439 F.3d 670, 707-08 (10th Cir. 2006) (affirming district court's application of 2-level downward departure based on susceptibility to abuse in prison). Given the nature of the offense, Mr. Ferguson's age of 49, and Mr. Ferguson's history of traumatic brain injuries, abuse is a realistic risk. *See United States v. Parish*, 308 F.3d 1025, 1031-32 (9th Cir. 2002) (affirming downward departure for susceptibility to abuse in prison of defendant convicted of possessing child pornography). Mr. Ferguson respectfully requests that this Court taken potential abuse in prison into account in determining the appropriate sentence.

### 4. Mr. Ferguson's age and zero criminal history are indicators that there is little to no risk of recidivism.

The United States Sentencing Commission's own data suggests that Mr. Ferguson is not likely to recidivate. As noted above, Mr. Ferguson falls within Criminal History Category I, and his criminal history score is zero. According to one study conducted by the Sentencing Commission, offenders with a Criminal History Category of I are less likely than others to re-offend. *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 28, (May 2004).[9] *See also Recidivism and the "First Offender"* (May 2004) at 17.[10]

Mr. Ferguson is 49 years old, has zero criminal history points, and suffers from depression, memory deficits, and psychiatric disorders secondary to head trauma. PSR ¶ 46. The evidence in this case indicates Mr. Ferguson ceased viewing child pornography over six years ago. Based on his offender profile, personal characteristics, history, and the nature of the offense, a lengthy in-custody sentence (anything beyond 24 months) is greater than necessary to meet the purposes of sentencing in 18 U.S.C. §3553(a).

### 5. The collateral consequences of Mr. Ferguson's conviction will be a sufficient to deter criminal activity, promote respect for the law, and provide just punishment of the offense.

Mr. Ferguson faces several collateral consequences for his felony conviction. After release from incarceration, he will be subjected to a lengthy term of supervised release with conditions. Due to the nature of the offense, Mr. Ferguson will be required to register as a sex offender, with

---

[9] Available at https://www.ussc.gov/research/research-publications/measuring-recidivism-criminal-history-computation-federal-sentencing-guidelines (last visited 4/13/2020).

[10] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last visited 4/13/2020).

the publication of that information to the community. This registration comes with significant limitations on where he may reside for the rest of his life.

The United States Supreme Court has recognized that even a probationary sentence is a punishment that substantially restricts liberty. *See Gall*, 552 U.S. at 48-49 and n. 4 (conditions of probation substantially restrict the liberty of probationers); 18 U.S.C. § 3553(a)(3) (directing judges to consider sentences other than imprisonment).

## CONCLUSION

For the foregoing reasons, the Court should grant sentencing variances in this case and enter a sentence of 24 months followed by five years' supervised release.

> OFFICE OF THE FEDERAL PUBLIC DEFENDER
> Julia L. O'Connell, Federal Public Defender
>
> By:   s/Robert Scott Williams
>       Robert Scott Williams, OBA# 19974
>       627 West Broadway
>       Muskogee, Oklahoma 74401
>       Telephone: (918) 687-2274
>       Facsimile: (918) 687-2392

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of June 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s):

Sarah McAmis - Assistant United States Attorney

                                              s/ Robert Scott Williams