IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff,* v. **GLENN RANDALL FERGUSON,** *Defendant.* | Case No.:  CR-17-17-RAW |

**GOVERNMENT'S SENTENCING BRIEF AND
RESPONSE AND OBJECTION TO DEFENDANT'S
<u>MOTION FOR SENTENCING VARIANCES</u>**

COMES NOW, the United States of America by and through United States Attorney Brian J. Kuester and Assistant United States Attorneys Sarah McAmis and Shannon L. Henson, and respectfully submits the following Sentencing Brief and Response and Objection to Defendant's Motion for Sentencing Variances.

**<u>INTRODUCTION</u>**

The goal of sentencing is to achieve a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). In doing so, the Court must account for a variety of factors specific to the particular defendant and particular case. The framework for determining an appropriate sentence is set forth in § 3553(a). In particular, § 3553(a) requires that the court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to

1

avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the victims of the offense.

In the case at bar, the Defendant was caught and confessed to the possession of child pornography.  Of the nearly 2000 videos and photographs that the Defendant searched for and collected of babies and children being sexually abused, the Government was able to identify approximately 20 of the victims.  Although the others have yet to be identified and are still unnamed, each is a real life human being.  Below are summaries from 10 of the identified victims who submitted impact statements in preparation for the Defendant's Sentencing.

Victim 1:   Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood.  I can never truly heal because the perpetrators and stalkers never allow me to do so.  Anyone viewing these videos/pictures is just as guilty for causing me or any other exploited child undue harm, unneeded stress and insecurity in a time when we need to feel safe and have a chance to heal/recover…These people need to be punished for taking away a major part of my childhood and sense of security.

Victim 2:   Each additional time that another person downloads and sees the computer images, it does me immeasurable additional harm.  I am hurt every time I hear about another criminal case that involves my images…I know that there is a lesser and lesser chance that the horror I feel about people seeing me in this way will ever end…This hurt is over and above the general "aching" in my heart that is always there.  It tells me that someone else was enjoying my pain…My knowledge that this defendant was among those who have downloaded, looked at, and enjoyed the pictures of me at my most vulnerable has caused me more and real psychological and emotional hurt and harm.

Victim 3:   For the past six years, I have heard the same statement repeatedly.  I quote, "victimless crime".  My daughter was the actual victim of the physical and mental abuse to create these images you and others desire to view…To say it is a "victim-less" crime is absolutely absurd.  These images will never be erased from the internet world and every time she is viewed, she is re-victimized…She re-lives it, I re-live it.  We will forever be "victims".

Victim 4:   I am still having emotional and psychological problems due to knowing that the images of me being abused as a child are circulated freely on the internet….Knowing that there are so many out there who have taken pleasure in my pain…My life will always be an emotional roller coaster because of the "public" nature of my own private hell.

Victim 5:   Knowing that some sick person is looking at me on the computer every day in a way that no one should look at a kid makes me feel violated.  It makes me want to throw up…Inside I'm really hurt.  I am a real person.

      Victim 6:      I feel tortured.

      Victim 7:      It leaves a knot in your stomach and a hole in your heart that can never be fixed…I don't know if a thousand years would make me feel like justice has been served.

      Victim 8:      I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain. My world came crashing down the day I learned that pictures of me being sexually abused had been circulated on the internet…The enormity of this has added to my grief and pain, and given me a paranoia. I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. I feel totally out of control. They are trading around my trauma like treats at a party and it feels like I am being raped all over again by every one of them. It sickens me to the core, terrifies me, and makes me want to cry…I want you to know that dealing with the effects of the stress of random men looking at pictures of my sex abuse as a child is like a full time job that wears me down and colors every aspect of my life. Please think of me and what I am going through.

      Victim 9:      I can find no words to express the fury I feel at those who participate in this evil or my scorn for any attempt to minimize the responsibility by feeble claims that the crime was "victimless". My daughter is a real person. She was horribly victimized to provide this sort of "entertainment". She is exploited anew each and every time an image of her suffering is copied, traded or sold. While the crime is clearly conscienceless, it is hardly "victimless". I asked my daughter what she most wanted to ask of the judge. Her request: "Please don't let them pretend no one is getting hurt."

      Victim 10:      Being sexually abused is something you never forget, no matter how hard you try. But when you have photographs of your abuse on the internet, presently being viewed by others, it makes it even more impossible to keep it in your past and move on from it. It is like the abuse is still happening. In those pictures of me, there is a girl, trapped there, saying "please rescue me." And instead of seeing a girl being used and abused in that picture or pictures, these men decide they would rather re-victimize me by using the pictures for their own sick sexual desires and trade them with other so they can do the same…If they think for a minute that they are not responsible because they did not take the picture or see me in person, they are dead wrong…Imagine how you would feel if someone took your child's, your sister's, or even your photo and masturbated to it? Would it bother you to know that people you don't know are fantasizing about you sexually, especially a child who is supposed to be protected and innocent?...There are still so many ways that my life would be different today if I had not been sexually abused and constantly reminded of it by the fact that people can still find, view, and send the pornographic pictures of me as a child online.

**SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

**I. The Nature and Circumstances of the Defendant's Crime (18 U.S.C § 3553(a)(1))**

The Defendant's criminal conduct is extremely serious and demands an appropriately serious sentence. On its face, the possession of child pornography "is 'a permanent record' of the depicted child's abuse and 'the harm to the child is exacerbated by its circulation'". *United States v. Paroline*, 134 S.Ct. 1710 at 1717, 572 U.S. 434, 188 L.Ed.2d 714 (2014). "The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse…plays a part in sustaining and aggravating this tragedy…In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Id.* at 1726. The United States Supreme Court also found that there is a "need to impress upon defendants that their acts are not irrelevant or victimless." *Id.* at 1729.

According to the Defendant, "the facts of his child pornography possession are 'typical' for a first offender". (Doc. 157 at p. 7). What is a "typical" child pornographer? The average person might assume a "typical" child pornographer is an adult man who looks at photos of teen girls who are "barely legal". If this type of activity is consistent with that of a "typical" child pornographer, Defendant's acts and conduct are certainly "atypical." During the course of the trial, the jury members were transformed from average citizens into witnesses of child sexual abuse through videos and photographs they will likely never forget. Out of the nearly 2000 images and videos that the Defendant was caught possessing, the Court and the jury were forced to view videos of babies, toddlers, and very young girls, video of a toddler being sexually penetrated by an adult male, video of a very young girl in bondage, tied up and blindfolded as she is sexually abused by an adult male, video of very young girls performing oral sex on adult males and the adult males ejaculating in their mouths, girls masturbating adult men to ejaculation, girls being penetrated with

fingers and objects and photos of little girls with adult men violating them in every way possible. Every time the Defendant searched for images of a new baby, saved the images, and viewed her being horrifically abused, he perpetrated and re-victimized that baby for his own pleasure. The Defendant's crime was abhorrent and must be treated as anything but "typical".

Defendant asserts he should be given leniency as his acts were that of a "typical" first offender of child pornography. In *United States v. Parish*, 308 F.3d 1025, 1028 (9th Cir. 2002), a clinical psychologist and the co-director of a sex offender treatment unit was brought in to testify about "typical" characteristics. The psychologist testified that the defendant's conduct was "significantly less serious" than that of other child pornographer offenders because the defendant "had not affirmatively downloaded the pornographic files, indexed the files, arranged them in a filing system, or created a search mechanism on his computer for ease of reference or retrieval." *Id.* at 1030. The psychologist t also described the content of the defendant's images as "pretty minor" compared to the content of images possessed by other offenders. *Id.* In the case at bar, the Defendant in fact completed all of the acts absent in *Parish* and possessed the worst type of child pornography – that involving babies. He should not be given any leniency.

## II. The Defendant's History and Characteristics (18 U.S.C. § 3553(a)(1))

In order to evaluate what is a "just sentence" in this case, the Court should recall the length and depth of the Defendant's attempt to deceive the Court in an effort to escape responsibility for his conduct. Before his arrest, the Defendant lived comfortably in a nice home with a wife and two children. He had a Ford Escape and a Toyota Tundra Pickup. The Defendant went to the gym every day. When he was not at the gym, the Defendant was "addicted to pornography" and looked at it "a lot", for "days at a time", because he "was bored". The Defendant searched for and obtained his pornography by downloading a sophisticated peer-to-peer program on to his computer. The

Defendant understood that the program allowed him and other pornographers to share and download from each other.  The Defendant also knew what words and phrases to use as search terms that would quickly find exactly what he needed – child pornography.

Now, over five years after-the-fact and when it is time for him to be held accountable, the Defendant claims that he was "unable to qualify for the downward adjustment for acceptance of responsibility" as a result of his "memory issues".  (Doc. 157 at p. 12).  While there was an extended period of time during which the Defendant was able to delay justice by feigning cognitive issues, the recorded jail phone calls, the Defendant made after the jury verdict, completely confirm the diagnosis of malingering made by the experts during the Defendant's competency proceedings. The Government detailed the contents of those calls in its Objection to the Draft Pre-Sentence Report.  (Doc. 152).

The calls make clear that the Defendant acts and responds one way when he is in Court, and a completely different way when he is speaking with family.[1] The Defendant has convinced multiple attorneys that he is unable to adequately understand or communicate.

The Defendant has caused his trial attorneys to make several statements about his mental capacities both in written pleadings and in oral statements to the Court.  In a pleading filed December 10, 2019, the attorneys stated the Defendant's "deficits in cognitive ability and especially his inability to form new memories in matters such as the complex proceedings in any criminal trial" remain at issue. (Doc. 99).  Although the trial transcript has not yet been prepared, the Government recalls several instances when the Defendant's attorneys described his condition to the Court: the fact that he did not remember them, the witnesses, or any of the facts of the case, and the fact that they could not adequately communicate with him. The Government also observed

---

[1] Dr. Allissa Marquez made the same observation when she reviewed the Defendant's jail phone calls during his four months at the Bureau of Prisons.  (Transcript of Competency Proceedings on February 28, 2019, p.66, lines 1-25).

that the Defendant sat expressionless and staring forward for the majority of his jury trial. In a pleading filed January 22, 2020, the attorneys stated:

> Mr. Ferguson did not interact with counsel meaningfully during the trial. He was a passive presence in the courtroom, and it is difficult to even characterize him as an "observer" of the proceedings because of his lack of engagement in the proceedings. The colloquy between Mr. Ferguson and the Court on the subject of Mr. Ferguson's right to testify at the jury trial demonstrated Mr. Ferguson's inability to process information and to make important decisions about his own defense. Additionally, Mr. Ferguson's defense, that the CP Images on Computer #1 were the responsibility of someone else in the household, was thwarted by Mr. Ferguson's limitations, because he had no ability to remember details from the time frame of 2014, the period specified by the Indictment. (Doc. 140).

On February 18, 2020, the attorneys asserted, "Mr. Ferguson was not able to participate meaningfully in his trial due to his significant deficits that caused this Court to rule him incompetent in 2018." (Doc. 147).

However, in the jail calls, the Defendant participates in normal conversations, he demonstrates that he has full knowledge of who his attorneys are and what the witnesses testified to at the trial, that he understands the appellate proceedings, that he communicates with his peers in the jail, that he understands the times and the procedures that he must follow within the jail, that he has significant knowledge about finances, that he blames other people and speaks of revenge, and that he has plans for how long he will spend in prison and what he plans to do upon his release. In addition to the evidence admitted during the jury trial which highlighted the characteristics of the Defendant, the phone calls show the depths of his attempts to deceive his family, girlfriend, and this Court. The phone calls show the true character of the Defendant.

### A. Response to the Defendant's request for downward departures or variances based upon his "vulnerability"

In addition to arguing that the Defendant's "issues" prevented him from accepting responsibility, the Defendant asserts that his "history of traumatic brain injuries" will render him "vulnerable" and at risk of "abuse" in a prison setting. (Doc. 157 at p. 12). The Guidelines specifically caution that a defendant's physical, mental, or emotional condition should not ordinarily be relevant in deciding whether to depart. U.S.S.G. §§ 5H1.3 and 5H1.4. The Defendant cites three cases as authority. The case of *Koon v. U.S.*, 439 F.3d 670 (1996), involved the internationally publicized beating of Rodney King, which led to widespread rioting and more than 40 people being killed. Defendant *Koon* was one of the law enforcement officers who inflicted the beating. The Court recognized that former police officers are susceptible to prison abuse and that *Koon* was particularly susceptible "as a result of the 'widespread publicity'". *Id.*

The defendant in *U.S. v. Lavelle*, 439 F.3d 670, 708 (10th Cir. 2006) was also a law enforcement officer who was involved in a "vast investigation spanning several years" and federal inmates distributed a publication about the case. In the only case cited by the Defense involving a child pornographer, *U.S. v. Parish*, 308 F.3d 1025, 1031 (9th Cir. 2002), the court took into consideration the defendant's "naiveté" insomuch as there was "no evidence that Parish ever intentionally downloaded any pornography and did in any way organize the materials on his computer" which the court determined "suggests that he may not have understood that he was coming into possession of these images".

The Defendant does not meet the criteria for being "vulnerable" under any of these cases. There has been little to no publicity about his case and he has never served in law enforcement. The Defendant is 49-years-old, 5 feet, 11 inches, and 200 pounds.[2] In his jail phone calls, he has

---

[2] In *Parish*, 308 F.3d at 1031, the court noted that the defendant was "5'11" and weighs 190 pounds. The reference to Parish's stature may have been related to the way he carried himself. Perhaps the judge thought Parish looked smaller than the probation officer thought he looked, or looked physically weak…To the extent that stature can be considered something more than merely physical height and weight, it is something that is better evaluated by a district

8

made multiple threats against his fellow inmates, including bragging that if an inmate gets in his face, the Defendant "will tear his fucking face off." The Defendant is sophisticated enough to discuss everything from his appeal to financial planning from jail. The Defendant is not an individual who should receive any special consideration or be considered vulnerable.

### III. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))

The Government began its brief with statements from a small percentage of the identified victims in this case. These are victims who the Defendant searched for, downloaded, shared with other pornographers, and looked upon for his own sexual pleasure. It is easy to argue, as the Defendant argued to the jury at trial, that the child pornographer is not as guilty as the abuser in the videos and pictures. However, it is a circular argument. If men like the Defendant did not seek each other out and agree to share these victims, there would be no market for the abusers to produce and distribute.

The Defendant's sexual desires toward babies and children ultimately led to this prosecution. Members of the community sat as jurors and watched a tiny portion of the Defendant's massive collection. If any of the individual girls involved in that collection knew that jurors in Oklahoma have seen her being raped and sodomized, it is safe to say that she would be re-victimized all over again. If any of those girls knew that the Defendant masturbated while watching her being degraded, hurt, and humiliated, she would certainly profess that the Defendant's crime was not "victim-less". The first video presented to the jury was of a baby girl being fully penetrated with an adult penis as she laid on top of her removed diaper. If and when she becomes aware of the video, that baby girl will likely spend the rest of her entire life

---

judge than an appellate panel that has never seen the defendant." In this case, it is evident that the Defendant worked out extensively as he told law enforcement. During the jury trial, the Government observed that Defendant was muscular and carried himself with physical confidence.

embarrassed, ashamed, and horrified of that video. The need for the sentence to reflect the seriousness of the Defendant's offense, justly punish the offense, and promote respect for the law, warrants a substantial sentence in this case.

**IV. The Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))**

The risk that those who possess child pornography pose to children is immense. "An analogy often used in the field may make this question easier to answer: How many people who collect baseball cards have also played the game (or would play, if given the opportunity)? In other words, do the things we collect reflect our fantasies and interests? An answer in the affirmative seems obvious." Handbook of Behavioral Criminology, p. 332, edited by Dr. Vincent B. Van Hasselt and Dr. Michael L. Bourke, Springer Intl. Publishing (2017). Likewise:

> A similar analogy addresses online collecting behavior and involves people who download images and videos about trout fishing. How many have spent time in the water with a rod and reel? Perhaps not all, but surely most. Equally important, how many of the people who watch fishing videos engage in fantasy while watching them? And this is the key point: When they view fish being pulled from scenic mountain streams, are they fantasizing about the next time they will be able to *watch* a fishing video, or the next time they will have the opportunity to *hook* a trout? It seems clear we view and collect things that reinforce our fantasies, and we fantasize about things we would like to do.

*Id*. The public has a right to be protected from a defendant who is sexually aroused by children, particularly a man like the Defendant herein who sexualizes girls as young as diapered babies.

In addition, Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *Irey*, 612 F.3d at 1206, (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the

State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."); and *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007)("The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.")  A significant sentence for this Defendant is necessary to deter current and future pornographers and would also demonstrate to the public that the sexual re-victimization of children will be seriously addressed and deterred when discovered.

**V.     The Need to Protect the Public from Future Crimes by the Defendant (18 U.S.C. § 3553(a)(2)(C)) and Response to the Defendant's assertion that he is not likely to recidivate**

As part of his request for a 24 month sentence, the Defendant refers to the data released by the United States Sentencing Commission in 2004 to argue that he is at low risk of re-offending. (Doc. 157 at p. 13).  However, in April 2020, the Commission released a new Report that measured the correlation between the length of incarceration and recidivism.  The Report lists as its "Key Findings":  "The Commission consistently found that incarceration lengths of more than 120 months had a deterrent effect" and "In two models, the deterrent effect extended to incarceration lengths of more than 60 months." https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf

The Defendant has never conceded that his sexual attraction toward babies and children is wrong or illegal. Although he claimed he was "addicted" and "needed help" in April of 2014, the Defendant has not sought out or received any type of sex offender counseling or treatment in the five years since. Instead, the Defendant entered into a relationship with a new woman who cares for her grandchildren who are the same age as the victims contained in the Defendant's pornography. In certain jail calls, the children can be heard in the background and the Defendant and his girlfriend discuss their welfare. The Defendant has failed to demonstrate that he is at low risk of re-offending and the public has a need to be protected from his future crimes.

## VI. The Need to Avoid Sentencing Disparities (18 U.S.C. § 3553(a)(6)) and Response to the Defendant's request for Downward Departure and Variance

As he did in his Objection to the Draft PSR, the Defendant argues that the enhancements he has been assessed can lead to sentencing disparities. As guidance, the Defendant cites the recent Tenth Circuit decision in *United States v. Cookson*, 922 F.3d 1079 (10th Cir. 2019). However, in *Cookson*, the defendant was sentenced after he took a course of action completely opposite to that of the Defendant herein: he "allocated, apologizing for his actions", "held a good job, stayed clean, attended counseling, and had made 'great strides in his life'", all of which was evidence of "extraordinary rehabilitation". *Id.* at 1086. Despite his actions, the defendant's lenient sentence was reversed and remanded "because the district court placed nearly exclusive focus on Mr. Cookson's presentencing rehabilitation in explaining its decision, the sentence it imposed is substantively unreasonable." *Id.* at 1095.

The Defendant also relies upon *United States v. DeRusse*, 859 F.3d 1232 (10th Cir. 2017). In that domestic kidnapping case "the court's primary consideration was the extent to which defendant's mental illness led to the delusional thinking that caused him to commit such an out-of-character crime." *Id.* at 1238. A mental illness is certainly distinguishable from the brain injury

the Defendant suffered from a car wreck or motorcycle wreck. The Defendant does not allege that either wreck caused him to desire child pornography. Instead, he continues to deny he even committed the crime and he presented the affirmative defense that the pornography belonged to someone else, all while at the same time trying to seek leniency.

Finally, the Defendant reminds this Court in footnote six of a case decided in this District; *United States v. Mandrell*, 741 F. App'x 554 (10th Cir. 2018). In its review, the Tenth Circuit recognized that *Mandrell* had argued the exact same arguments to the District Court as has the Defendant herein: (1) that the court should depart from the Guidelines because the enhancements in § 2G2.2 are inherent in the crime itself, (2) the Guidelines tend to result in advisory imprisonment ranges at or near the statutory maximum for all offenders, (3) the Guidelines are a directive from Congress and not based on empirical evidence, and (4) *Mandrell* would be easy prey in prison because of his mental impairments.[3] Despite the nearly identical arguments, the defendant's sentence was affirmed.

**VII. The Need to Provide Restitution to any Victims of the Offense**

The Presentence Investigation Report correctly identifies the victims who have requested restitution from the Defendant and the median average of restitution orders awarded to date by Courts across the United States.

## CONCLUSION

The goal of sentencing is to achieve a sentence that is "sufficient but not greater than necessary" while taking into account a variety of factors specific to the particular defendant and particular case.

---

[3] In *Mandrell,* the defendant requested that the court vary below the 97 month guideline range and instead sentence the defendant to 60 months. Here, the Defendant is requesting a substantially larger variance: from a guideline range of 188-235 months imprisonment, with a statutory maximum of 120 months, all the way down to 24 months imprisonment.

The Defendant is a man who is sexually attracted to babies, toddlers, and very young girls. The Defendant became part of a sophisticated network of child pornographers so that he could share the girls with others and amass a substantial collection. Each and every time the Defendant pleasured himself with the images and videos in his possession, he re-victimized a girl who had already been subjected to horrific sexual abuse. The Defendant then claimed that alleged brain injuries from wrecks should somehow allow him to evade responsibility. While claiming in Court that he could not understand what was going on, the Defendant was returning to his jail cell and placing phone calls which demonstrated that he was actually perpetrating a fraud upon the Court. It is time for the Defendant to be held accountable for all of the children hurt by his conduct. Because his criminal conduct was extreme, and based on the other § 3553(a) factors addressed above, the Defendant should be sentenced to 120 months in prison, as such a sentence would be sufficient but not greater than necessary given all of facts surrounding this case.

    Respectfully submitted,

    BRIAN J. KUESTER
    United States Attorney


s/    Sarah McAmis
    SARAH McAMIS, OBA# 15903
    Assistant United States Attorney
    United States Attorney's Office
    520 Denison Avenue
    Muskogee, OK 74401
    (918) 684-5100
    sarah.mcamis@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I hereby certify that on June 9, 2020, I electronically transmitted the attached documents to the Clerk of Court.

  Robert Scott Williams
  Attorney for Defendant

             s/  Sarah McAmis
                SARAH McAMIS
                Assistant United States Attorney